

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00014-CV

**IN THE INTEREST OF M.J.H.**, Child

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2022PA01786
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:      Patricia O. Alvarez, Justice

Sitting:          Patricia O. Alvarez, Justice
                  Beth Watkins, Justice
                  Lori I. Valenzuela, Justice

Delivered and Filed: June 20, 2024

AFFIRMED

In this parental rights termination case, the trial court terminated Mom's parental rights to her child, M.J.H.[1]

Mom challenges the legal and factual sufficiency of the evidence for the trial court's finding on the best interest of the child.

Because the evidence was legally and factually sufficient to support the trial court's finding under the elevated evidentiary standards, we affirm the trial court's order.

### BACKGROUND

In this case, Mom is the only appellant, and we limit our recitation of the facts to those relating to Mom and M.J.H.

---

[1] We use aliases to protect the child's identity. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8.

Mom suffers from a traumatic brain injury. Her caseworker testified that her general understanding seems to be very limited.

When M.J.H. was born, Mom abandoned her at the hospital. For this reason and due to Mom's drug use, the Department took custody of M.J.H. and placed her with foster parents. The Department attempted to place M.J.H. with biological family, but both her aunt and her grandmother were unable to accept the placement because they had preexisting obligations that would prevent them from providing the special care M.J.H. required due to neurological delays, tremors, and spasms.

In an attempt to reunite M.J.H. with Mom, Mom's caseworker created a service plan that included a parenting class, a drug assessment, a domestic violence course, a psychological evaluation, and resource management. When the caseworker went over it with her, Mom nodded that she understood it, and she signed it. The caseworker had concerns about whether Mom understood. When the caseworker asked Mom whether she received disability benefits, Mom nodded and said, "Yes, no, maybe."

About ten months into her service plan, Mom's caseworker drove Mom to her psychological examination. The psychologist asked whether Mom consented to having her caseworker present during the evaluation, to which Mom nodded and said, "Yes, no, maybe." But the psychologist had a very difficult time communicating with Mom to the point that he had to rely on information from the caseworker and from Mom's sister to complete it. The caseworker testified that the psychologist characterized the Department's family plan for Mom as "a feat."

Around the same time as the psychological evaluation, Mom appeared in court, which she had not done previously. As a result, the trial court allowed her visits with M.J.H. But even when Mom was allowed to visit with M.J.H., she did not. By the time of trial, she had not seen M.J.H.

at all. Mom asked her caseworker about M.J.H., and the caseworker described M.J.H.'s condition to her, but Mom never followed up about M.J.H.'s care.

In contrast, M.J.H.'s foster parents regularly took M.J.H. to her doctor's appointments and followed up with her neurologist as needed. They cared for M.J.H., and she bonded with them.

By the time of trial, Mom had a guardian ad litem appointed for her, but the guardian ad litem was never able to reach her. Mom did not appear at trial.

In its final order, the trial court terminated Mom's parental rights based on its findings that 1) Mom constructively abandoned M.J.H., as defined in Texas Family Code 161.001(b)(1) subsection (N), and 2) termination of Mom's parental rights was in M.J.H.'s best interest.

Mom now appeals. She challenges the legal and factual sufficiency of the evidence on the best interest of the child. Before we address Mom's sole issue, we briefly recite the applicable evidentiary and appellate review standards.

### EVIDENCE REQUIRED, STANDARDS OF REVIEW

"[I]n a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies." *In re S.J.R.-Z.*, 537 S.W.3d 677, 691 (Tex. App.—San Antonio 2017, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The evidentiary standard[i] the Department must meet and the statutory grounds[ii] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[iii] and factual[iv] sufficiency standards of review. We apply those standards here.

**BEST INTEREST OF THE CHILD**

In her only issue, Mom argues the evidence was legally and factually insufficient to support the trial court's finding that terminating her parental rights was in M.J.H.'s best interest. *See* TEX. FAM. CODE § 161.001(b)(2).

**A.      Unchallenged Statutory Ground Finding**

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support a parental rights termination order. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.).

Here, the trial court found that Mom constructively abandoned M.J.H. *See* TEX. FAM. CODE § 161.001(b)(1)(N).

Mom does not directly challenge the trial court's ruling under subsection (N), and we do not address it. *See* TEX. R. APP. P. 38.1(f), (i); *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (requiring appellate courts to review grounds (D) and (E) "[w]hen a parent has presented the issue for appeal"). Instead, Mom challenges and we address the trial court's best interest finding.

**B.      Best Interest of the Child Factors**

The Family Code statutory factors[v] and the *Holley* factors[vi] for best interest of the child are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interest of the child.

The trial court heard the following testimony regarding the child's age and vulnerabilities, Mom's course of conduct, and the child's placement.

*1.  The Child's Desires*

Appellant has correctly stated that M.J.H.'s desires were not specifically addressed at trial because of her young age. But the caseworker noted that there were signs of M.J.H.'s bonding with and trust in her foster parents. The caseworker stated that M.J.H. acknowledges her foster

parents when she sees them, and she laughs and engages with them. She also looks for them, for example, when the caseworker holds her. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (factor (A)); TEX. FAM. CODE § 263.307(b)(1).

### 2. *The Child's Present and Future Emotional and Physical Needs*

M.J.H. needs a stable placement and permanency. *See Holley*, 544 S.W.2d at 372 (factor (B)); TEX. FAM. CODE § 263.307(b)(1). She suffers from neurological delays, tremors, and seizures, and her foster parents are attentive to these issues. M.J.H.'s foster parents have taken her to a sleep study, and they regularly check in with her neurologist to better understand M.J.H.'s condition and to keep her safe and healthy.

Mom showed no interest in M.J.H.'s medical well-being after her caseworker described M.J.H.'s condition. The caseworker testified that she did not believe Mom could care for M.J.H. because she did not seem to be able to understand a child's needs. *See Holley*, 544 S.W.2d at 372 (factor (B)); TEX. FAM. CODE § 263.307(b)(12)(F). The caseworker stated that she was not even sure Mom understood what the caseworker told her.

### 3. *Emotional and Physical Danger to the Child Now and in the Future*

As stated, part of the reason the Department took custody of M.J.H. was that Mom abandoned her at the hospital. *See Holley*, 544 S.W.2d at 372 (factors (B), (C), (D)); TEX. FAM. CODE § 263.307(b)(1); *see also In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied) ("[A] court may judge a parent's future conduct by her past conduct.").

Over the course of Mom's case with the Department, her caseworker attempted to contact her three times per month, with varying success. Mom responded sparsely and inconsistently. If the caseworker asked why she was not participating in the services she was referred to, she would answer, "Yes, no, maybe." She would nod her head to the caseworker and appear to acknowledge her, but it was not clear that she understood.

According to the caseworker, Mom seemed to be unable to understand what was required of her, and she seemed unable to care for a one-year-old. *See Holley*, 544 S.W.2d at 372 (factors (B), (C), (D)); TEX. FAM. CODE § 263.307(b)(1).

### 4. Parental Abilities of the Individuals Seeking Custody

Mom showed no parenting ability during her case. *See Holley*, 544 S.W.2d at 372 (factors (B), (C), (D)); TEX. FAM. CODE § 263.307(b)(1), (12). She did not attend the parenting class that was required by her service plan, and she never visited M.J.H. when she was allowed visits.

In contrast, M.J.H.'s foster parents were not only attentive to M.J.H.'s medical needs and physical care, but they also provided her a room and appropriate toys. They bonded with her and wanted to adopt her.

### 5. Programs Available to Assist These Individuals to Promote the Best Interest of the Child

Mom was referred to services that would have helped her complete her service plan and become a better parent. *See Holley*, 544 S.W.2d at 372 (factor (E)). But her caseworker testified that it did not seem Mom could complete the services or care for a child based on her limited general understanding.

### 6. Plans for the Child by These Individuals or by the Agency Seeking Custody

The caseworker testified that the M.J.H.'s foster parents plan to adopt her. *See id.* (factor (F)).

### 7. Stability of the Home or Proposed Placement

According to the caseworker, M.J.H.'s foster parents have provided a loving, appropriate, safe home with all of M.J.H.'s "own necessities." *See Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G)). In contrast, Mom did not have her own home over the course of her case with the Department. She stayed with her sister and also at the San Antonio shelter, Haven for Hope. She

did not address her drug use during her case with the Department; she did not drug test as required; and she did not regularly respond to her caseworker. Mom did not exhibit stability as a parent. *See id.*

## C. Sufficient Evidence

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have "reasonably form[ed] a firm belief or conviction" that it was in M.J.H.'s best interest for Mom's parental rights to be terminated and for M.J.H. to stay in her foster-to-adopt placement. *See In re H.R.M.*, 209 S.W.3d at 108 (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's best-interest-of-the-child finding. *See* TEX. FAM. CODE § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Mom's sole issue.

## CONCLUSION

For the reasons given above, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[i] <u>Clear and Convincing Evidence</u>. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[ii] <u>Statutory Grounds for Termination</u>. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE § 161.001(b). Here, the trial court found Mom's course of conduct met subsection (N):

> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
> (i) the department has made reasonable efforts to return the child to the parent;
> (ii) the parent has not regularly visited or maintained significant contact with the child; and
> (iii) the parent has demonstrated an inability to provide the child with a safe environment

*Id.* § 161.001(b)(1)(N).

[iii] <u>Legal Sufficiency</u>. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of

fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.*

iv <u>Factual Sufficiency</u>. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

v <u>Statutory Factors for Best Interest of the Child</u>. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

(1)  the child's age and physical and mental vulnerabilities;
(2)  the frequency and nature of out-of-home placements;
(3)  the magnitude, frequency, and circumstances of the harm to the child;
(4)  whether the child has been the victim of repeated harm after the initial report and intervention by the department;
(5)  whether the child is fearful of living in or returning to the child's home;
(6)  the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
(7)  whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;
(8)  whether there is a history of substance abuse by the child's family or others who have access to the child's home;
(9)  whether the perpetrator of the harm to the child is identified;
(10)  the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;
(11)  the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;
(12)  whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:
(A) minimally adequate health and nutritional care;
(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;
(C) guidance and supervision consistent with the child's safety;
(D) a safe physical home environment;
(E) protection from repeated exposure to violence even though the violence may not be directed at the child; and
(F) an understanding of the child's needs and capabilities; and
(13)  whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

vi *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

(A) the desires of the child;
(B) the emotional and physical needs of the child now and in the future;
(C) the emotional and physical danger to the child now and in the future;
(D) the parental abilities of the individuals seeking custody;
(E) the programs available to assist these individuals to promote the best interest of the child;
(F) the plans for the child by these individuals or by the agency seeking custody;
(G) the stability of the home or proposed placement;
(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).